*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SOYED AHMED,

Plaintiff-Appellee/Cross-Appellant,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

Defendant-Appellant/Cross-
Appellee.

UNPUBLISHED
August 27, 2019

No. 342188
Wayne Circuit Court
LC No. 16-015810-NI

Before: GADOLA, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

Defendant appeals, by leave granted[1] the trial court order denying its motion for summary disposition in this first-party insurance matter, and plaintiff cross-appeals the trial court's order denying summary disposition in his favor. Because there were no material questions of fact that plaintiff made false statements with respect to his insurance claim, we reverse the trial court's decision on defendant's motion for summary disposition and direct the trial court to enter summary disposition in defendant's favor.

On or about June 9, 2016, plaintiff was driving a vehicle owned by his wife's uncle when he was involved in an automobile accident. Plaintiff asserts he incurred injuries in the accident to his head, shoulder, wrist, hip, neck, and back. At the time of the accident, plaintiff held an automobile insurance policy issued by defendant. According to plaintiff, defendant refused to pay all PIP benefits owed to plaintiff under the policy. Plaintiff thus initiated an action against defendant on December 5, 2016, seeking relief for defendant's alleged breach of contract and seeking a declaration concerning the applicability of the no-fault act to plaintiff's claims and the amount of benefits plaintiff is entitled to receive from defendant as a result of the automobile accident.

---

[1] Unpublished order of the Court of Appeals, issued June 21, 2018 (Docket No. 342188).

Defendant moved for summary disposition pursuant to MCR 2.116(C)(10), asserting that plaintiff misrepresented a pre-existing condition and submitted false information concerning his claim for replacement and attendant care services. Defendant thus asserted that under the fraud and concealment clause in the insurance policy, the policy is void and plaintiff cannot receive any benefits. Plaintiff responded that he, not defendant, was entitled to summary disposition pursuant to MCR 2.116(I)(2). Plaintiff asserted that defendant did not deny paying him benefits for any reasons it now claims, but instead denied benefits for its false assumption that plaintiff was driving for Uber at the time of the accident and that it was thus not the responsible insurer. According to plaintiff, defendant unreasonably refused to pay him the benefits he was owed and had no justification for denying plaintiff benefits. The trial denied both motions for summary disposition, finding that there was a question of fact concerning whether plaintiff was driving for Uber at the time of the accident and questions of fact regarding whether plaintiff made material misrepresentations warranting a voiding of the policy.

We review de novo a trial court's decision regarding a motion for summary disposition to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood,* 461 Mich 109, 118; 597 NW2d 817 (1999). A motion for summary disposition made under MCR 2.116(C)(10) tests the factual sufficiency of the complaint and the court considers all affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion to determine whether there is any question of material fact. *Bernardoni v City of Saginaw*, 499 Mich 470, 472–473; 886 NW2d 109 (2016). When the submitted evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. *Id*. at 473. In addition, when a motion is made and supported under subrule (C)(10), an adverse party must, "by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." *Id*., quoting MCR 2.116(G)(4). If the adverse party fails to do so, then judgment, if appropriate, shall be entered against him or her. *Id*. "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." MCR 2.116(I)(2).

Questions involving the proper interpretation and application of a contract or the legal effect of a contractual clause are reviewed de novo. *Rory v Contl Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). The ordinary rules of contract interpretation apply to the interpretation of insurance contracts. *McGrath v Allstate Ins Co*, 290 Mich App 434, 439; 802 NW2d 619 (2010).

> The language of insurance contracts should be read as a whole and must be construed to give effect to every word, clause, and phrase. When the policy language is clear, a court must enforce the specific language of the contract. However, if an ambiguity exists, it should be construed against the insurer. An insurance contract is ambiguous if its provisions are subject to more than one meaning. An insurance contract is not ambiguous merely because a term is not defined in the contract. Any terms not defined in the contract should be given their plain and ordinary meaning, which may be determined by consulting dictionaries. [*Id*. (internal citations omitted)]

Before delving into defendant's claim on appeal, we address plaintiff's assertion that defendant has waived its fraud and breach of insurance contract affirmative defenses because it

-2-

failed to plead these defenses with specificity as required by MCR 2.112(D)(2). "[T]he primary function of a pleading in Michigan is to give notice of the nature of the claim or defense sufficient to permit the opposite party to take a responsive position. *Baker v Marshall*, 323 Mich App 590, 595; 919 NW2d 407 (2018), quoting *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 317; 503 NW2d 758 (1993). Plaintiff was put on sufficient notice of the challenged affirmative defenses.

Defendant's affirmative defenses included the following: "Plaintiff's claim is, in whole or in part, fraudulent or so excessive that it has no reasonable foundation . . ."; "Plaintiff's benefits are not past-due, nor did Defendant unreasonably delay or refuse to pay benefits, because a reasonable question of entitlement and/or a reasonable question of law existed . . ."; and "Plaintiff, or those acting in concert with Plaintiff, have misrepresented material facts in connection with the procurement of the policy or Plaintiffs claim under the policy, thereby voiding the policy ab initio and any applicable coverage under it." Defendant stated additional affirmative defenses relating to the possibility that plaintiff was driving for Uber at the time of the accident. These defenses were sufficiently pleaded with specificity such that plaintiff was put on notice that defendant was asserting defenses of fraud and breach of contract.

On appeal, defendant contends that the trial court erred in denying its motion or summary disposition because there was no question that plaintiff made material misrepresentations and false statements in his claim for benefits which, according to the plain language of the insurance policy, voids the policy. We agree.

In *Mina v Gen Star Indemnity Co*, 218 Mich App 678; 555 NW2d 1 (1996), rev'd in part on other grounds, 455 Mich 866 (1997), this Court stated:

> To void a policy because the insured has willfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. A statement is material if it is reasonably relevant to the insurer's investigation of a claim. [*Id.* at 686–687 (internal citations omitted).]

In *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 423-424; 864 NW2d 609 (2014) this Court was called upon to interpret an insurance policy general fraud exclusion "which provided: 'We do not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.' " The *Bahri* Court reiterated that it "has explained the requirements for establishing fraud or false swearing as follows" then quoted the four elements set forth in *Mina, supra. Bahri*, 308 Mich App at 424-425. In an insured's breach-of-contract action, the insurer's burden of proof with respect to its affirmative defenses is the preponderance-of-the-evidence standard. See, *Stein v Home-Owners Ins Co*, 303 Mich App 382; 843 NW2d 780 (2013).

The insurance contract defendant issued to plaintiff and effective on the June 9, 2016 accident date provides, in relevant part:

PART V-GENERAL PROVISIONS

\*\*\*

C. Fraud or Concealment

The entire policy will be void if, whether before or after a loss, you, any family member, or any insured under this policy has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. engaged in fraudulent conduct; or

3. made false statements

relating to this insurance or to a loss to which this insurance applies.

The insurance policy at issue clearly and unambiguously states that the *entire* policy will be void if the insured intentionally concealed or misrepresented any material fact or circumstance, which is established if the four factors in *Mina, supra,* have been met. The insurance policy also, however, clearly and unambiguously states that the entire policy will be void if the insured simply "made false statements" relating to the insurance or a loss to which the insurance applies. This basis for voiding the policy does not require that any false statement be made intentionally. Here, viewing the evidence in a light most favorable to plaintiff, defendant has established that plaintiff made false statements relating to the insurance or a loss to which the insurance applies.

Plaintiff testified at deposition, through an interpreter, that he went to his regular doctor, Dr. Redwan Uddin, four or five days after the accident. Defense counsel asked plaintiff, "Prior to the accident, the June 9th accident, had you made any complaints to Dr. Redwan [Uddin] of back pain?" Plaintiff responded "No." Defense counsel then asked, "Prior to the accident, had you had any back pain?" Plaintiff again responded, "No." At the end of plaintiff's deposition defense counsel again asked, "Again, just so I'm clear, prior to the June 9th, 2016 accident, had you ever had neck pain?" and, "Prior to the June 9th [2016] accident, had you ever had any back pain?" and, "Prior to the June 9, 2016 accident, had you had any shoulder pain on either side?" Plaintiff responded "No" to each question.

However, plaintiff's medical records detail a history of back pain and treatment for the same. A March 19, 2012 record from Adult and Pediatric Medicine and signed by Dr. Meraj Yunus indicates that plaintiff was being seen for "chronic ongoing lower back pain." The exam indicates that plaintiff's back was tender to touch in the lumbar area and that some spasms were noted. The assessment included "chronic back pain" and the note under "Plan" was for plaintiff to "continue pain meds, muscle relaxants, and back exercises." An April 7, 2012 record from the same facility and signed by the same doctor indicates that plaintiff was seen for "chronic ongoing lumbar area back pain." The "Assessment" stated "acute lumbar strain" with the same treatment. An April 20, 2015 report signed by Dr. Uddin indicates that plaintiff was there due to "back pain for 3 days." Plaintiff presented "with c/o Back pain. The pain began 2-3 days ago.

-4-

The pain is located in the lower back. The severity of the pain is moderate. The nature of the pain is intermittent. Aggravating factors include physical activities, sneezing, twisting." He was prescribed 600 MG of Ibuprofen 3 times per day for 2 weeks. A June 4, 2015 report indicates that plaintiff was seen for a chief complaint of "back pain since morning." Plaintiff was prescribed Norco and scheduled for a follow up in a month. A September 23, 2015 report indicates that plaintiff was being seen for lower back pain which started "3-4 weeks ago" and that aggravating factors include driving, lifting, physical activities, sitting, sneezing, and twisting. He was again prescribed 600 MG of Ibuprofen 3 times per day for 30 days.

Plaintiff attempts to explain the inaccuracies in plaintiff's deposition testimony as being due to his limited knowledge of the English language and faulty translations by plaintiff's translator at deposition. However, plaintiff stated at the beginning of his deposition that he could read English and could speak some English. When asked by defense counsel at the conclusion of the deposition whether he understood all of the questions he had been asked, plaintiff responded that he did. Additionally, plaintiff's counsel stated that he also spoke plaintiff's primary language, Bengali. Plaintiff's counsel corrected the translator twice during plaintiff's deposition but did not do so during the sequence of questions concerning plaintiff's prior back and neck pain. Had there been any misinterpretation of plaintiff's answers, counsel could readily have corrected them either by requesting that the translator properly interpret or by questioning plaintiff himself during the deposition. There is simply no indication that plaintiff did not understand what he was being asked or that the interpreter incorrectly stated plaintiff's answers to the posed questions. Plaintiff specifically stated, more than once, that he had not had back pain prior to the accident. His medical records clearly contradict those statements. Because defendant claims that his back was injured in the accident, any prior back problems are material and relevant to his claim. In denying prior back pain, plaintiff thus made intentional material misrepresentations and/or false statements relative to his back.

Plaintiff also made intentional material misrepresentations and/or false statements with respect to replacement service and attendant care benefits. Plaintiff testified at deposition that his wife was the only one who provided any assistance to him. He also testified that on September 1, 2016, he, along with his uncle and a friend, went to Saudi Arabia and stayed there for 3-4 weeks.

Plaintiff submitted an attendant care form covering the month of September 2016, signed by plaintiff's wife and dated October 8, 2016, indicating that his wife performed the following attendant care services for defendant every day in September 2016: medication management, preparing meals and cooking, was on call, and assisted with all activities of daily living. The form further states that she changed linens and bedding 3 times per week, assisted with home physical therapy and massage 3 times per week, assisted with bathing and grooming 3 times per week, assisted with daily appointments/agenda planning 3 times per week, and provided transportation/ attended appointments 3 times per week for the entire month of September. Plaintiff also submitted a replacement services form for the month of September 2016, signed on October 8, 2016, by his wife, stating that his wife provided replacement services for plaintiff every day during the month of September (including cooking, dishwashing, dusting, vacuuming, taking out the trash and interior maintenance). At deposition, plaintiff's wife testified that she filled out the attendant care and replacement services forms herself and signed each one. She further testified that the forms accurately stated the services she provided to plaintiff.

Clearly, because plaintiff was not even in the country from September 1, 2016, to at least September 22, 2016, plaintiff's wife could not have provided the stated attendant care and replacement services for plaintiff that she claimed she provided on those dates. As a result, plaintiff made false statements relative to the attendant care and replacement services provided for him during the month of September 2016. These representations, along with those concerning plaintiff's lack of prior back pain, were material, as they were "reasonably relevant to the insurer's investigation of a claim." *Mina*, 218 Mich App at. 687.

The above being true, the unambiguous, clear language of Part V, subsection C. in the insurance policy allows defendant to void the entire policy. Summary disposition should therefore have been entered in defendant's favor. We therefore need not address plaintiff's cross-appeal, claiming that he, rather than defendant, was entitled to summary disposition.[2]

We reverse the trial court's decision on defendant's motion for summary disposition and remand to the trial court to enter summary disposition in defendant's favor. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Deborah A. Servitto
/s/ James Robert Redford

---

[2] We briefly note plaintiff's suggestion that because defendant did not pay his benefits based on a "false assumption" that he was driving for Uber at the time of the accident, he is entitled to summary disposition. However, summary disposition is not the remedy if an insurer is found to have unreasonably refused or failed to pay owing benefits:

> An insurer still runs the risk of sanctions under [MCL 500.3142] of the act if its liability ultimately is established and payments are found to be overdue, a risk which subjects it to an even greater rate of interest on overdue payments if both § 3142 interest and postcomplaint interest under MCL § 600.6013; MSA § 27A.6013 are awarded. [*Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 56–57; 457 NW2d 637 (1990)]

In addition, an insurer may be liable for an insured's attorney fees if insurance benefits are determined to be overdue. See, MCL 500.3148.